1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10  DARNELL O. MCGARY,

11                    Plaintiff,

CASE NO. 3:15-cv-05840-RBL-DWC

12        v.

REPORT AND
RECOMMENDATION

13  JAY INSLEE, et al.,

Noting Date: August 3, 2018

14                    Defendants.

15

16        The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

17  States Magistrate Judge David W. Christel. Plaintiff Darnell O. McGary, proceeding *pro se*,

18  initiated this civil rights action on November 19, 2015. Dkt. 1.

19        Plaintiff alleges that, when he was civilly committed at the Special Commitment Center

20  ("SCC"),[1] he was mistreated in multiple unconstitutional ways. He argues he was provided

21  deficient medical treatment, deficient mental health treatment, and that his sexually violent

22

23

24  _____

[1] Though the case was filed when Plaintiff was civilly committed, Plaintiff was released from the SCC on
September 27, 2016. Dkts. 65, 93-4.

REPORT AND RECOMMENDATION - 1

1  predator ("SVP") treatment was improper because he was not properly classified as a SVP. He

2  also argues Defendant Mark Strong should be held liable because he was superintendent of the

3  SCC, that Plaintiff was subjected to mistreatment by SCC staff, and a plethora of other,

4  generalized allegations. However, Plaintiff has not demonstrated that he received medical or

5  mental health treatment that was a substantial departure from accepted professional judgment,

6  nor that Defendant Strong had a personal hand in Plaintiff's alleged constitutional deprivations.

7  Further, Plaintiff has provided no evidence other than his Amended Complaint and unsworn

8  Affidavit to show he was mistreated by SCC staff. As such, none of Plaintiff's claims can

9  succeed. Therefore, the Court recommends Defendants' Motion for Summary Judgment be

10  granted and Plaintiff's action dismissed.

11  **I.      Background**

12        Plaintiff filed his original Complaint along with a filing fee on November 19, 2015. Dkt.

13  1. Following an Order to Provide a More Definite Statement (Dkt. 30), Plaintiff filed his

14  Amended Complaint (Dkt. 31), the operative complaint in this action. Plaintiff generally alleges

15  Defendants have subjected him to unconstitutional treatment. *Id*. He states he received

16  inadequate medical care, inadequate mental health care, and he alleges he was improperly

17  provided treatment as a SVP. *Id*. He also alleges he was subjected to verbal and sexual

18  harassment from staff and that staff conspired together to "set up" Plaintiff, ensuring he would

19  never be able to leave the SCC. *Id*. He finally alleges Defendant Strong, the superintendent of the

20  SCC, knew of these issues but refused to take any corrective action. *Id*.

21        On February 27, 2017, Plaintiff filed a "Motion for Summary Judgment and Cross-Claim

22  Against Defendants' Motion for Summary Judgment" ("Plaintiff's Motion"). Dkt. 87.

23  Defendants filed their own Motion for Summary Judgment ("Defendants' Motion"). Dkt. 89. All

24

REPORT AND RECOMMENDATION - 2

1  parties filed Responses to the respective Motions (Dkts. 100, 108) and all parties have filed

2  Replies (Dkts. 107, 113). Plaintiff also filed a Motion for Additional Discovery ("Discovery

3  Motion") on March 14, 2017. Dkt. 106. Plaintiff then appealed the decision of a separate, nearly

4  identical case (*McGary v. Cunningham, et al.*, Case No. 3:13-cv-05130-RBL-JRC) to the Ninth

5  Circuit Court of Appeals, and the Court ordered the parties to show cause why this case should

6  not be stayed pending the outcome of the appeal of that nearly identical case. Dkt. 125. After

7  receiving the parties' Responses, the Court filed a stay of this case on March 10, 2017. Dkt. 129.

8       On March 4, 2018, the parties filed a Joint Status Report, indicating Plaintiff's appeal had

9  been terminated and advising the Court that both parties believed the action was ready for

10  determination. Dkt. 135. The Court lifted the Stay on June 6, 2018, and renoted the pending

11  motions for consideration. Dkt. 136. The Court subsequently denied the Discovery Motion on

12  July 13, 2018. Dkt. 137.

13  **II.    Standard of Review**

14       Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant

15  summary judgment if the movant shows that there is no genuine dispute as to any material fact

16  and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or

17  is genuinely disputed must support the assertion by:

18       (A) citing to particular parts of materials in the record, including depositions,
         documents, electronically stored information, affidavits or declarations,
19       stipulations (including those made for purposes of the motion only), admissions,
         interrogatory answers, or other materials; or
20       (B) showing that the materials cited do not establish the absence or presence of a
         genuine dispute, or that an adverse party cannot produce admissible evidence to
21       support the fact.

22  Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in

23  the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th

24

1  Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v.*

2  *County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

3      The party moving for summary judgment has the initial burden to demonstrate no genuine

4  issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In*

5  *re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always

6  bears the initial responsibility of informing the district court of the basis for its motion," and

7  identifying those portions of the record, including pleadings, discovery materials, and affidavits,

8  "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477

9  U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact

10  exists does not preclude summary judgment. *California Architectural Building Products, Inc. v.*

11  *Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which

12  is "relevant to an element of a claim or defense and whose existence might affect the outcome of

13  the suit," and the materiality of which is "determined by the substantive law governing the

14  claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th

15  Cir. 1987).

16      Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a

17  grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

18  'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477

19  U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No

20  longer can it be argued that any disagreement about a material issue of fact precludes the use of

21  summary judgment."). In other words, the purpose of summary judgment "is not to replace

22  conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

23  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly

24  support an assertion of fact or fails to properly address another party's assertion of fact as

REPORT AND RECOMMENDATION - 4

1    required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

2    materials – including the facts considered undisputed – show that the movant is entitled to it[.]"

3    Fed R. Civ. P. 56(e)(3).

4    **III.    Motion to Strike**

5        Defendants have included a Motion to Strike in their Response to Plaintiff's Motion. Dkt.

6    108, p.25. At the summary judgment stage, the Court does not look at the admissibility of the

7    form of evidence, but whether it could be presented in an admissible form at trial. *Fraser v.*

8    *Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003). Here, Defendants ask the Court to strike

9    newspaper and internet articles submitted by Plaintiff as incurable hearsay under Federal Rules

10   of Evidence ("FRE") 801 and 802. Dkt. 108, p. 25. Defendants also move to strike evidence of

11   allegations and a settlement from an unrelated lawsuit, alleging Plaintiff is improperly submitting

12   them to prove liability in violation of FRE 408. *Id*. They also allege all these materials are

13   irrelevant, and therefore inadmissible, under FRE 402. *Id*.

14       One of the articles Plaintiff filed with his unsworn Affidavit relates to misconduct by

15   SCC employees, another involves an incident in which an SCC employee was accused of child

16   rape, and a third discusses inadequate SVP treatment at the SCC. Dkt. 88, pp. 23-29, 52-53.

17   Because Plaintiff appears to present these news articles for the truth of the matter asserted, the

18   articles are hearsay pursuant to FRE 801 and 802. *See Johnson v. Cate*, 2015 WL 5321784 at *9

19   (E.D. Cal. 2015) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 1990 WL

20   126500 at *3 (D. Ariz. 1990)) ("It is axiomatic to state newspaper articles are by their very

21   nature hearsay evidence and thus inadmissible if offered to prove the truth of the matter

22   asserted[.]") Thus, they could only be presented at trial in an admissible form if they fall under

23   one of the hearsay exceptions. *See* FRE 803. The Court finds no applicable exceptions here, and

24

the newspaper articles are therefore inadmissible. *See Johnson*, 2015 WL 5321784 at \*9 (finding

newspaper articles to be inadmissible hearsay and granting a motion to strike at the summary

judgment stage); *Bowcut v. Beauclair*, 2009 WL 2245132 at \*3 (D. Idaho 2009).

Plaintiff has also included a "Complaint for Damages" from an unrelated case, and a

stipulated judgment from a settlement in that case. Dkt. 88, pp. 12-21. Evidence of compromise

offers or negotiations is inadmissible to prove the validity or amount of a claim. FRE 408(a). It is

unclear why Plaintiff has offered this complaint and stipulated judgment, but Defendants argue it

is an attempt to prove liability. One of the principles underlying FRE 408 is that "evidence of a

settlement is generally not relevant, because settlements may be motivated by a variety of factors

unrelated to liability." *Pacific Gas and Elec. Co. v. Lynch*, 215 F. Supp. 2d 1016, 1026 (N.D.

Cal. 2002) (citing *Hudspeth v. CIR*, 914 F.2d 1207, 1213-14 (9th Cir. 1990)). Insofar as Plaintiff

attempts to provide these documents to prove Defendants' liability, the Court agrees with

Defendants that offering evidence of an unrelated settlement to prove liability in this case is

prohibited under FRE 408. Therefore, the Motion to Strike is granted and the Court will not

consider the above noted documents submitted with Plaintiff's unsworn Affidavit.

**IV.    Discussion**

Plaintiff has filed a meandering Amended Complaint, containing largely conclusory

allegations. *See* Dkts. 31, 87. Most of his particularized facts pertain to his conditions of

confinement and the fact of his confinement, a claim that has already been dismissed. Dkts. 54,

1    pp. 9-10; 73, p. 5; 78, p. 1. However, the Court has identified the claims below as being properly

2    pled by Plaintiff and Defendants have properly responded to them.

3        A.   *Inadequate Mental Health and Medical Care*

4        Plaintiff alleges he received constitutionally inadequate medical treatment while he was

5    housed at the SCC. "Persons who have been involuntarily committed are entitled to more

6    considerate treatment and conditions of confinement than criminals whose conditions of

7    confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-322 (1982).

8    Because of this, the Court evaluates a civil committee's claims under the Fourteenth

9    Amendment, rather than the Eighth Amendment, and determines whether Plaintiff's allegations

10   fall under the "professional judgment" standard articulated in *Youngberg v. Romeo*¸ 457 U.S. 307

11   (1982). *See Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016); *Samuels v. Ahlin*, 2017

12   WL 6594635 at *5 (E.D. Cal. 2017).

13       Under the *Youngberg* standard, decisions made by a professional about the medical care

14   of involuntarily committed persons are "presumptively valid." *Youngberg*, 457 U.S. at 323.

15   Thus, the Court must determine whether Defendants' "'conduct diverge[d] from that of a

16   reasonable professional.'" *Mitchell*, 818 F.3d at 443 (quoting *Ammons v. Wash. Dep't of Soc. &*

17   *Health Serv.*, 648 F.3d 1020, 1027 (9th Cir. 2011)). "[L]iability may be imposed only when [a

18   Defendant's] decision is such a substantial departure from accepted professional judgment,

19   practice, or standards as to demonstrate that the person responsible actually did not base the

20   decision on such a judgment." *Youngberg*, 457 U.S. at 323. Mere negligence or medical

21   malpractice is not sufficient to demonstrate a constitutional violation. *See Patten v. Nichols*, 274

22   F.3d 829, 842-43 (4th Cir. 2001) (applying *Youngberg* to a denial of medical care for a civilly

23   committed psychiatric patient and holding more than negligence is required to state a

24

1  constitutional violation). Rather, the professional judgment standard is an objective standard that

2  equates "to that required in ordinary tort cases for finding of conscious indifference amounting to

3  gross negligence." *Ammons*, 648 F.3d at 1029.

4      Finally, persons who are civilly committed as SVPs have a constitutional guarantee of

5  access to mental health treatment that provides them a realistic opportunity to be cured or

6  improve their mental health such as to be released. *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th

7  Cir. 1980). However, the Constitution only requires that this treatment be "minimally adequate."

8  *Youngberg*, 457 U.S. at 319.

9      1.  <u>General Inadequate Mental Health and Medical Care Allegations</u>

10     Plaintiff first generally alleges he received inadequate medical care. Plaintiff includes

11  several reports from the Inspection of Care Committee ("IOC"), an oversight committee for the

12  SCC, attempting to use those reports to support his claim that the SCC knew of, yet failed to

13  remedy, constitutionally deficient medical care. *See* Dkt. 31, pp 22-57. One report indicates that

14  the SCC experienced a budget shortfall leading up to the 2010 fiscal year and was concerned

15  that, if not addressed, the SCC could have difficulty maintaining care for its residents. Dkt. 31,

16  pp. 49-53. However, the timeframe for the present case spans from November 19, 2012 to

17  November 19, 2015. As such, the first report falls well outside the timeframe of Plaintiff's

18  allegations. The remaining report makes no mention of Plaintiff, only general observations about

19  the SCC. *See id.*, pp. 22-48. The reports thus do not show what treatment Plaintiff received.

20     According to the evidence submitted by Defendants, Plaintiff has been diagnosed with

21  schizophrenia. Dkt. 93-1, p. 18; Dkt. 93-3, p. 44. He was voluntarily taking medication for his

22  schizophrenia as of August 23, 2016. Dkt. 90, p. 2. Beginning October 26, 2012, Plaintiff has

23  consistently received psychological care. Dkt. 95-1. On July 29, 2013, he was prescribed an

24

increased dose of Trilafon, an antipsychotic medication prescribed for schizophrenia, which he took consistently. *Id*. at pp. 15, 17. He was also provided Benadryl as a sleep aid and reported no complaints with his medical care or the medications he was being prescribed. *Id*. at p. 7. It appears he was provided medication consistently throughout his time at the SCC. *See* Dkt. 95-2, pp. 1-33. The evidence indicates that he was compliant with his medication regimes, but that he did not wish to take medication in the quantity recommended by his healthcare providers. *See* Dkt. 98-1, pp. 2-3 Upon his release from the SCC in September of 2016, he was provided with ninety days' worth of the medications he had been prescribed while housed at the SCC. *Id*. at p. 1. Finally, when he complained of a heart palpitation, he was promptly provided an EKG and an evaluation for heart trouble. *Id*. at pp. 44-53.

Here, Plaintiff has not shown Defendants substantially deviated from professional judgment in administering Plaintiff's medical care. His Amended Complaint is devoid of any details, and he only generally alleges his health care was sub-par. To the extent that Plaintiff has a serious medical need, Defendants have provided constitutionally sufficient medical care. Plaintiff was provided with treatment every time he went to either a physical or mental health provider. *See* Dkts. 95-1, 95-2. He was consistently provided medication for his diagnosed schizophrenia. Further, Plaintiff's allegation that he wrongfully received treatment for his schizophrenia has no merit. Two doctors independently diagnosed him (Dkt. 93-1, p. 18; Dkt. 93-3, p. 44) and the Court finds it cannot be a substantial departure from accepted professional judgment to treat a patient for a diagnosed condition. Finally, the sole time he believed he had heart trouble, he was provided with an EKG and evaluation. Defendants have consistently provided care for Plaintiff, and Plaintiff has provided no evidence except his own, conclusory allegations to show Defendants' treatment was a substantial departure from accepted

1  professional judgment. Further, insofar as Defendants provided Plaintiff with medical care, their

2  opinions as medical experts are presumptively valid, and Plaintiff has done nothing to rebut that

3  presumption. Because Plaintiff has failed to show Defendants actions were substantial departures

4  from accepted professional judgment or rebut the presumption that Defendants opinions are

5  valid, Plaintiff has not shown he was subjected to constitutionally deficient medical or mental

6  health care. Thus, Plaintiff has failed to raise a genuine issue of material fact as to the claims that

7  Defendants substantially departed from accepted professional judgment when providing him

8  with mental health and medical care.

9       2.   <u>Improper Treatment as a SVP</u>

10      Plaintiff alleges he was treated as a SVP improperly because he did not meet the criteria

11  for classification as a SVP. Insofar as Plaintiff challenges his classification as a SVP and his

12  commitment to SCC, that claim has already been dismissed from this lawsuit on several

13  occasions and the Court declines to address it again. Dkts. 54, pp. 9-10; 73, p. 5; 78, p. 1.

14      Insofar as Plaintiff argues his SVP treatment was constitutionally inadequate, he has not

15  shown his treatment was a substantial departure from accepted professional judgment. The

16  evidence shows the SCC utilizes a need-based treatment program, tailored to the individual

17  needs of each individual and is designed to move patients through five phases of treatment, from

18  intake to community transition. *See* Dkt. 92, pp. 3-5. It is not disputed that Plaintiff completed

19  this course of treatment and has since been released back into the community. As of February 4,

20  2013, he was attempting to restart his sex offender treatment. *Id*. at p. 21. By March 2, 2015, he

21  had progressed to the third level of his sex offender treatment. *Id*. at p. 10. During treatment, he

22  consistently met with his treatment team and made consistent progress leading up to his hearing

23  before his release. Dkt. 93-1, pp. 5-6. The treatment provided by Defendants changed as

24

1  Plaintiff's needs changed. *Id*. Dr. Karen Franklin, Plaintiff's expert psychologist at his release

2  hearing, noted Plaintiff "has so changed through offender-specific treatment that he no longer

3  meets the definition of a [SVP]." Dkt. 93-1, p. 22. Dr. Amy Phenix, the expert psychologist

4  retained by the State, noted that Plaintiff had progressed enough in his sex offender treatment

5  "that mental health treatment is more beneficial for [Plaintiff] than sex offender treatment." Dkt.

6  93-3, p. 47. She also concluded the treatment had been effective such that Plaintiff no longer

7  qualified as a SVP. *Id*. at p. 53. Plaintiff was subsequently released back into the community.

8  Dkt. 93-4, p. 1.

9        Here, Plaintiff vaguely alleges he was provided improper SVP treatment, but he has

10  provided nothing to show that Defendants departed from accepted professional judgment when

11  they provided him treatment. He was placed on an individualized treatment plan, he was

12  consistently examined by his treatment team, and his treatment was consistently updated to

13  reflect his ongoing needs. Indeed, the treatment was so effective that two psychologists

14  concluded he could no longer be classified as a SVP and he was released from the SCC.

15  Plaintiff's release indicates Defendants did not unconstitutionally deny Plaintiff SVP treatment

16  such that he could improve and ultimately be released into the community because Plaintiff

17  successfully completed such treatment and has, in fact, been released. Plaintiff has also failed to

18  show Defendants' choice to place Plaintiff on an individualized treatment plan and to monitor

19  and adjust that plan to ensure it was effective was a substantial departure from accepted

20  professional judgment. *Youngberg*, 457 U.S. at 323. Because Plaintiff has failed to show

21  Defendants actions were substantial departures from accepted professional judgment, Plaintiff

22  has not shown his SVP treatment was constitutionally deficient. Thus, Plaintiff has failed to raise

23

24

1  a genuine issue of material fact as to the claim that Defendants provided him inadequate

2  treatment as a SVP.

3      3.  Malpractice and Gross Negligence

4      In his motion for summary judgment, Plaintiff argues he is entitled to summary judgment

5  because certain Defendants provided medical care that amounted to malpractice and gross

6  negligence. Dkt. 87, pp. 11-12. However, as noted above, malpractice is not sufficient to state a

7  constitutional violation. *Patten*, 274 F.3d at 842-43. Thus, Plaintiff's allegation that Defendants'

8  actions constitute malpractice is immaterial to whether he received constitutionally adequate

9  medical care.

10     Insofar as Plaintiff alleges Defendants acted with gross negligence, the professional

11 judgment standard under *Youngberg* equates to the tort gross negligence standard. *Ammons*, 648

12 F.3d at 1029. Plaintiff could thus state a claim of inadequate medical care if he alleged

13 Defendants acted with gross negligence in providing him treatment. *Id.*. However, nowhere in

14 his Amended Complaint does he mention gross negligence. *See* Dkt. 31. He raises it for the first

15 time in his Motion for Summary Judgment. Because Plaintiff did not include allegations of gross

16 negligence in his Amended Complaint, he cannot recover for them. Further, even if he had

17 included claims of gross negligence in his Amended Complaint, the Court has already found

18 Plaintiff received constitutionally adequate medical care because Defendants did not

19 substantially depart from accepted professional judgement when they provided Plaintiff

20 treatment. Because Defendants' care did not substantially depart from accepted professional

21 judgment, it cannot be said that their treatment was grossly negligence. *See Ammons*, 648 F.3d

22 1029. Because malpractice alone does not raise a constitutional violation and because Plaintiff

23 has not shown how Defendants actions constitute gross negligence, Plaintiff has not shown he

24

received constitutionally inadequate medical care. Thus, Plaintiff has failed to raise a genuine issue of material fact as to the claim that Defendants' treatment constitutes either malpractice or gross negligence.

### 4. Conclusion

Plaintiff has failed to show that his medical and mental health treatment substantially deviated from accepted professional judgment, and he has failed to show he was improperly provided treatment as a SVP. Further, because he has failed to show his treatment departed from professional judgment, he has vailed to demonstrate Defendants' actions constituted gross negligence. Finally, his allegations that Defendants' care amounts to medical malpractice does not constitute a constitutional violation as a matter of law. Therefore, the Court recommends Defendants' Motion (Dkt. 89) be granted and Plaintiff's claims pertaining to inadequate medical and mental health treatment be dismissed.

### B. Supervisory Liability

Plaintiff argues Defendant Strong should be held liable as the superintendent of the SCC because he was aware of, yet ignored, various acts of staff misconduct. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To satisfy the second prong, a plaintiff must show the individually named defendant caused, or personally participated in causing, the alleged harm. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

1   As such, in a § 1983 action, "supervisory officials are not liable for actions of subordinates on

2   any theory of vicarious liability." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989) (citing

3   *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). Rather, a supervisor may only be liable

4   "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2)

5   a sufficient causal connection between the supervisor's wrongful conduct and the constitutional

6   violation." *Id.* at 646 (citation omitted). Such liability can be imposed, for instance, if the

7   supervisor knew or reasonably should have known his subordinates would cause constitutional

8   injury, or if his own conduct showed reckless indifference to the rights of others. *Starr v. Baca*,

9   652 F.3d 1202, 1207-08 (9th Cir. 2011) (internal citations and quotation marks omitted); *see also*

10  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (a supervisor is only liable for his subordinates'

11  constitutional violations if he "participated in or directed the violations, or knew of the violations

12  and failed to act to prevent them").

13          Here, Plaintiff names Defendant Strong, the superintendent of the SCC, and alleges he

14  should be held liable simply because he was the superintendent. He clarifies in his unsworn

15  Affidavit that Defendant Strong should be liable because, as superintendent of the SCC, he

16  "knew and failed to prevent the conditions from happening." Dkt. 88, p. 2. First, the Court has

17  already found Plaintiff's constitutional protections were not violated when he received adequate

18  medical care. *See* Section I(A) *supra*. Thus, even if Defendant Strong was directly responsible

19  for Plaintiff's allegations, he was not participating in a constitutional violation and so would not

20  be liable.

21          Further, even if Plaintiff had alleged constitutional violations, Plaintiff must demonstrate

22  not only that Defendant Strong was a supervisor, but also that he was either personally involved

23  in the alleged constitutional violation or that there was other causal connection between the

24

supervisor and the alleged constitutional deprivations. As noted above, Plaintiff must provide some sort of real, probative evidence in order to survive summary judgment. *T.W. Electrical Serv., Inc.*, 809 F.2d at 630. At best, Plaintiff alleges Defendant Strong is responsible for his staff's conduct because he was their superior and should have been aware of their actions. To support that allegation, he provides one set of sworn allegations, one set of unsworn allegations, and nothing to corroborate either set. Plaintiff has not provided adequate support for his claims against Defendant Strong. Thus, summary judgment in favor of Defendants is appropriate. Therefore, the Court recommends Defendants' Motion (Dkt. 89) be granted and Plaintiff's claims pertaining to supervisory liability be dismissed.

### C. Mistreatment by Staff

Plaintiff generally alleges Defendants used racial slurs against him and attempted to "set him up" so he would stay committed for a longer period of time. Persons who are civilly committed are being detained for treatment, not punishment, and so may not constitutionally be subjected to punitive conditions. *Youngberg*, 457 U.S. at 320. "[P]unitive conditions may be shown (1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless 'excessive in relation to the alternative purpose[.]" *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).

Plaintiff alleges the environment at the SCC is not therapeutic, but racist, "highly sexualized," and plagued by "hostility between residents and staff." Dkt. 31, p. 11. Though Plaintiff broadly alleges harassment and conspiracy as to "[a]ll defendants" (Dkt. 31, p. 11), his allegations appear focused on Defendants Norton, Bonnema, and Grimm (*id*. at p. 7), with the remaining Defendants involved only by their secondary knowledge of the alleged misconduct (*id*. at pp. 6-8). In Plaintiff's unsworn Affidavit, he states "the conditions of confinement were

1    strongly influenced by a sense of hostility between staff and resident[s]" and the conditions were

2    not therapeutic. Dkt. 88, p. 2. He also includes allegations unrelated to his Amended Complaint,

3    apparently in an attempt to support his allegations that the SCC is a racist and sexualized

4    institution. *Id*. at pp. 5-6. He argues several Defendants acted in sexually provocative ways in

5    their attempt to "set up" Plaintiff and ensure he was taken to a higher level security unit. *Id*. In

6    his Amended Complaint, Plaintiff argues the SCC used female staff as "decoy[s]" in an attempt

7    to "make or keep him in a psychotic state." Dkt. 31, pp. 12-13. He also states Defendant

8    Bonnema has "never layed-off her erotic behavior at the work site," but fails to provide further

9    details. *Id*. at p. 12. Plaintiff has provided nothing except his Amended Complaint and an

10   unsworn Affidavit to support these allegations, and alleges only verbal harassment and

11   provocative appearance. Defendants deny they ever made any racial comments toward Plaintiff,

12   and deny they engaged in any sexual behavior with or near Plaintiff. *See* Dkt. 91, p. 2-3; Dkt. 94,

13   p. 3.

14          The purpose of summary judgment "is not to replace conclusory allegations of the

15   complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888.

16   However, that is precisely what Plaintiff has done here. Though the Court draws inferences in

17   the light most favorable to the nonmoving party, the nonmoving party must nonetheless make a

18   "sufficient showing on an essential element of [his] case with respect to which [he] has the

19   burden of proof" to survive summary judgment. *Celotex Corp.*, 477 U.S. at 323. Further,

20   conclusory and speculative testimony does not raise an issue of material fact sufficient to defeat

21   summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.

22   1979). Here, Plaintiff relies solely on his Amended Complaint and an unsworn affidavit to

23   support his allegations. He has not included anything showing that Defendants subjected him to

24

REPORT AND RECOMMENDATION - 16

1    conditions explicitly designed to punish, and he has provided no evidence that any of

2    Defendants' actions were excessive in comparison to their non-punitive purpose. This reliance

3    on bare allegations is not enough to survive summary judgment.

4    　　　　Further, "[w]hen opposing parties tell two different stories, one of which is blatantly

5    contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

6    that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v.*

7    *Harris*, 550 U.S. 372, 380 (2007). Here, Plaintiff has provided bald allegations whereas

8    Defendants have provided declarations, exhibits, and an affidavit directly contradicting

9    Plaintiff's allegations. Dkt. 91, p. 2; Dkt. 94, p. 3; Dkt. 97, p. 3. Defendants have provided

10    observation reports from Defendant Norton, showing Plaintiff had a number of interactions that

11    made her uncomfortable, ultimately leading to a no contact directive based on Plaintiff's

12    "escalating behavior and inappropriate focus" on Defendant Norton. Dkt. 93-10; *see also* Dkt.

13    97, pp. 1-2; Dkt. 97-1. Defendant Bonnema and Grimm have also produced evidence indicating

14    their interactions with Plaintiff were routine, contrary to Plaintiff's allegations. Dkt. 91; Dkts 94,

15    94-1. Defendant Bonnema reports minimal contact with Plaintiff, none of which was out of the

16    ordinary (Dkt. 91), and Defendant Grimm provided observations reports indicating routine

17    contacts with Plaintiff while she managed his case (Dkt. 94-1). Plaintiff's bald allegations that

18    Defendants Norton, Bonnema, and Grimm acted provocatively to Plaintiff and attempted to "set

19    him up" are blatantly contradicted by the evidence provided by Defendants and a reasonable jury

20    could not believe Plaintiff's completely unsupported allegations in light of the evidence before

21    the Court. As such, the Court need not adopt Plaintiff's version of facts for purposes of summary

22    judgment here. *Scott*, 550 U.S. at 380.

23

24

Finally, all of Plaintiff's allegations against Defendants appear to involve some form of verbal harassment or, in the case of his "decoy" allegations, the mere presence of Defendants in Plaintiff's vicinity. "Mere verbal harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983." *Townsend v. King*, 2014 WL 1024009 at *6 (E.D. Cal. 2014) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)) (verbal harassment against a civilly committed person, without more, does not violate the Constitution). Because verbal harassment does not constitute a constitutional violation, Plaintiff's allegations that staff used racial slurs, and nothing more, does not state a claim for a constitutional violation. The Court also finds that, if verbal harassment including racial epithets cannot rise to the level of a constitutional violation without something more, Plaintiff's perception of SCC staff as overly sexualized merely because of their presence also does rise to the level of a constitutional violation. Because of this, he also has not alleged a constitutional violation for Defendants alleged provocative appearance. Thus, even if Plaintiff had provided evidence of the alleged conduct, the alleged verbal abuse and Defendants' provocative appearance does not rise to the level of a constitutional violation. Plaintiff has provided no evidence of his alleged abuse, and if he had, his allegations based on verbal abuse and perceived promiscuity do not rise to the level of a constitutional violation. Therefore, the Court recommends Defendants' Motion (Dkt. 89) be granted and Plaintiff's claims pertaining to mistreatment by staff be dismissed.

### D.  Other Generalized Claims

As noted above, throughout his Amended Complaint, Plaintiff also includes numerous additional claims. For example, he alleges staff conspired to keep him in the SCC, that staff conspired to commit him to the intensive management unit ("IMU"), and that staff fabricated

1   progress notes to those ends. *See generally* Dkt. 31. However, again, Plaintiff has included

2   nothing except his groundless allegations to support these claims. As noted above, the purpose of

3   summary judgment is to produce actual, probative evidence, not rely on unsupported assertions

4   in a complaint. *T.W. Electrical Serv., Inc.*, 809 F.2d at 630. Plaintiff has failed to do so here.

5   Because Defendants have sustained their burden and provided facts and evidence to support their

6   Motion, and because Plaintiff has produced nothing except his generalized allegations, summary

7   judgment is appropriate in favor of Defendants. Therefore, the Court recommends Defendants'

8   Motion (Dkt. 89) be granted and Plaintiff's claims pertaining to generalized constitutional

9   violations be dismissed.

10          *E.  Declaratory and Injunctive Relief*

11          Plaintiff also requests both declaratory and injunctive relief, asking the Court to declare

12  Defendants' actions unconstitutional and to enjoin them from future unconstitutional conduct.

13  Though Plaintiff was a civil committee, not a prisoner, the Court may use the logic of state

14  prisoner cases when analyzing the propriety of injunctive and declaratory release after a civil

15  committee has been released to the community. *See Williams v. Botich*, 2010 WL 11534578 at

16  *5 (C.D. Cal. 2010) (applying reasoning used in state prisoner cases regarding injunctive relief to

17  a civil detainee).  A prisoner's release while his case is still pending "will moot any claims for

18  injunctive relief relating to the prison's policies unless the suit has been certified as a class

19  action." *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). As with injunctive relief, a

20  prisoner's release from prison will generally moot claims seeking declaratory relief. *Alvarez v.*

21  *Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012); *see Rhodes v. Stewart*, 488 U.S. 1, 2-4 (1988) (per

22  curiam). "The reason is that the released inmate is no longer subject to the prison conditions or

23

24

REPORT AND RECOMMENDATION - 19

1   policies he challenges." *Alvarez*, 667 F.3d at 1064; *see also Incumaa v. Ozmint*, 507 F.3d 281,

2   286–87 (4th Cir. 2007) (citing cases from several circuits).

3        Plaintiff is no longer in custody at the SCC, and so he is no longer subjected to the

4   allegedly unlawful conduct described in his Amended Complaint. Because he is no longer

5   subjected to the conditions, a request that the Court order Defendants to treat Plaintiff differently

6   or a request that the Court declare Defendants' actions unconstitutional is moot. Therefore, the

7   Court recommends Defendants' Motion (Dkt. 89) be granted and Plaintiff's request for

8   declaratory and injunctive relief be denied.

9        *F.   Qualified Immunity*

10       Plaintiff argues Defendants are not entitled to qualified immunity and Defendants dispute

11   that argument. However, the Court has already made determinations as to all of Plaintiff's claims

12   on the merits. Therefore, the Court declines to make a determination as to qualified immunity at

13   this time.

14   **V.     Conclusion**

15       Plaintiff has failed to adequately allege his medical and mental health care fell below a

16   constitutional standard because he has failed to provide any evidence suggesting Defendants'

17   actions were a substantial departure from accepted professional judgment. Plaintiff has also

18   failed to show how Defendant Strong's supervisory role is sufficient to hold him liable, and

19   Plaintiff has provided no evidence that SCC staff ever mistreated him. Further, because Plaintiff

20   has now been released from the SCC, injunctive and declaratory relief are no longer appropriate.

21   Finally, the Court has made determinations as to Plaintiff's claims on the merits, and so declines

22   to make a finding as to qualified immunity at this time. Therefore, the Court recommends

23

24

1 Plaintiff's Motion (Dkt. 87) be denied, Defendants' Motion (Dkt. 89) be granted, and Plaintiff's

2 action dismissed.

3          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

5 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

6 review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

7 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

8 August 3, 2018, as noted in the caption.

9

10          Dated this 13th day of July, 2018.

11

12                                                    _____

13                                                    David W. Christel
                                                      United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24